(120 App. Div. 451)

## BEDELL et al. v. EDGETT et al.

(Supreme Court, Appellate Division, Second Department. June 7, 1907.)

LANDLORD AND TENANT—LEASE—COVENANTS—ACTION TO COMPEL PERFORMANCE —PLEADINGS—SUFFICIENCY.

Defendants leased to plaintiff certain property under a lease, providing that, in case an additional part of the premises occupied by a tenant should at any time become vacant, defendants would rent the same to plaintiff, and that, if other parts of the premises should become vacant during the term of the lease to plaintiff, and the lessees should elect not to take possession of them, defendants would not rent them for certain purposes. *Held*, that the complaint, in an action to compel defendants to lease the additional parts of the premises to plaintiff, alleging that at the time of the lease to plaintiff a certain tenant occupied part of the additional

premises under lease thereof, which, by its terms, expired on a certain date, and that he still occupied the same without plaintiff's consent, was insufficient to show the existence of the condition precedent to the covenant to offer plaintiff the additional premises.

Appeal from Special Term, Kings County.

Action by Alfred M. Bedell and another against James W. Edgett and others. From an interlocutory judgment overruling defendant's demurrer to the complaint, they appeal. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, GAYNOR, and MILLER, JJ.

John J. Kuhn, for appellants.
A. D. Peake, for respondents.

JENKS, J. The appeal is from an interlocutory judgment overruling the defendants' demurrer that the complaint does not state facts sufficient to constitute a cause of action. The action is to compel the defendants to execute and to deliver a lease in accord with a covenant in a lease between the parties, providing for a lease of an additional part of the premises. I think that the plaintiffs do not plead the existence of the condition precedent to the covenant to offer to them the smaller shop for rent. The condition is:

"In case the smaller store of said premises now occupied by a dealer in hair goods shall at any time become vacant, the lessors will rent the same to the lessees," etc.

The pleading is:

"That at the date of said lease the defendant Harry Jacobs was in the occupancy of that portion of the first or store floor of said building described in said lease as 'the smaller store of said premises occupied by a dealer in hair goods,' under a lease thereof, which by its terms expired May 1, 1906, and is still in the occupancy thereof, and is now so occupying without the consent and against the protests of these plaintiffs, and is the identical person described in said lease as a dealer in hair goods."

If the allegation suffice, it must be for the reason that the condition precedent meant that upon the expiry of the lease to Jacobs the plaintiffs might receive a lease of the premises occupied by him. If such was the meaning of the parties, there is no apparent reason why they should not have expressed it in plain words. As it is not thus expressed, it is incumbent on the plaintiffs to show that the condition as expressed has such meaning. "Vacant means unfilled, unoccupied, without a claimant, tenant or occupier. A house was called vacant which was inhabited by no one." Burrill, Law Dict. 1019. A vacant house is an untenanted house. Anderson's Law Dict. 1078. Vacant is unoccupied. Standard Dictionary. "Not ocupied or filled with incumbent or tenant." Century Dictionary. The termination of the lease might result in the shops becoming vacant. The tenant at the end of his term may be required to vacate. Excelsior Steam Power Co. v. Halsted, 5 App. Div. 124, 39 N. Y. Supp. 43. But the premises are not vacant if the tenant remain after the end of the term named in the lease under which he entered into possession. But it may well be that the hair dresser had the right of renewal, or that he remained and

remains in occupancy as a hold-over. The law will not presume that he is a trespasser upon vacant premises. The lessors might have been willing to lease the premises in case they became vacant, and yet unwilling to end the tenancy of the hair dresser upon the termination of his existing lease. In one case, they would obtain a tenant for vacant premises; in the other, they must cast out an old tenant simply to gain a new one. On the other hand, the lessees might have been content with the first right to take the premises if they became vacant in order to protect their business and to avoid competition nearby. I find evidence of this in the provision of the lease which reads:

"It is further agreed that if said stores or either of them become vacant during the term of this lease, and the lessees elect not to take possession of them as herein provided, then and in that case the lessors shall not rent either of said stores for the purpose of, nor permit the same to be occupied for, the manufacture or sale of cloaks or suits."

It is the function of the court to construe the agreement as written, not to make a new agreement by construction. In Schoonmaker v. Hoyt, 148 N. Y. 425, 42 N. E. 1059, the court say:

"In the construction of contracts or statutes, the intention of the parties or Legislature is to be sought in the words and language employed; and if the words are free from ambiguity, and express plainly the purpose of the instrument, there is no occasion for interpretation. Contracts or statutes are to be read and understood according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. Courts cannot correct suspected errors, omissions, or defects, or by construction vary the contracts of parties. If the words employed convey a definite meaning, and there is no contradiction or ambiguity in the different parts of the same instrument, then the apparent meaning of the instrument must be regarded as the one intended. McCluskey v. Cromwell, 11 N. Y. 593, 601; Johnson v. Hudson River R. R. Co., 49 N. Y. 455, 462; Benton v. Wickwire, 54 N. Y. 226."

"Powell says: 'The signs of the intentions of men are of two sorts, namely, words and actions. As to positive words the rule seems to be that, unless there be the most decisive reasons which lead us to conjecture the intent was otherwise, they are to be understood in their proper and most known signification. Not the grammatical one, which regards the etymology and original of them, but that which is vulgar and most in use; for use is the judge, the law, and the rule of speech.' Powell on Contracts, p. 225.

"Parsons says: 'The object of interpretation and construction is to find the intention of the parties, and surely that intention is best sought by affixing to the words of an instrument such meanings as are common or ordinary.' Contracts, vol. 2, p. 501, note 't.'

"So Kent says: 'The bulk of mankind act and deal with great simplicity,' and 'words are to be taken in their popular and ordinary meaning, unless some good reason be assigned to show that they should be understood in a different sense.' "

"In Herrman v. Merchants' Insurance Co., 81 N. Y. 184, 37 Am. Rep. 488, the subject for construction was a condition in a fire insurance policy that the policy should be void if the premises became 'vacant and unoccupied.' Earl, J., said: 'Here we have the two words joined together, "vacant and unoccupied"; and what do they mean? They should not be taken in any technical or narrow sense. They need not be taken in the sense in which they may have been understood by underwriters, as both parties to this contract were not underwriters, supposed to be familiar with the meaning of such words when used in the business of fire insurance; but they must be taken in their ordinary sense, as commonly used and understood. We must endeavor to ascertain how the insured understood and could properly understand them in other words, the meaning which they convey to the common mind.' "

These expressions are collated in a valuable note in Jones on Construction of Contracts, where many other authorities will be found. It seems to me that:

"There is no room for doubt or question as to the meaning or intent of the language employed, and therefore no room for construction. The apparent meaning must be regarded as the intended one." Christopher St. R. Co. v. Twenty-Third St. R. Co., 149 N. Y. 51, 43 N. E. 538.

The interlocutory judgment must be reversed, with costs, and the demurrer must be sustained, with costs. All concur.