## AMERICAN TRACT SOCIETY v. JONES.

(Supreme Court, Appellate Term. April 9, 1912.)

1. EVIDENCE (§ 441*)—LEASE—PRIOR ORAL AGREEMENTS.

An oral agreement by a landlord to permit a tenant of designated rooms in an office building to use another room as an entrance, made prior to the execution of a written lease of the designated rooms only, is merged in the written lease, and a breach thereof is not an eviction.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2030–2047; Dec. Dig. § 441.*]

2. EVIDENCE (§ 427*)—PAROL EVIDENCE—POSSESSION OF TENANT.

An oral agreement by a landlord to permit a tenant of designated rooms in an office building to use another room as an entrance, made prior to the written lease, is material on the issue whether the landlord gave to the tenant full possession of the premises prior to giving him a key to the designated room; and, though the landlord may deprive the tenant of the use of the other room as an entrance, he must, when he does so, place the tenant in full possession of the designated rooms by supplying him with a key thereto.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1861; Dec. Dig. § 427.*]

3. LANDLORD AND TENANT (§ 128*)—POSSESSION OF TENANT—EVIDENCE.

A landlord, leasing two rooms in an office building to a tenant, knew of the continued occupancy of a part of one of the rooms by a third person, and his retention of a key to the premises given him by the landlord, and he acquiesced therein, and knew that it was necessary for the tenant to have an additional key to enjoy the beneficial use of the rooms. *Held* that, though the tenant permitted the third person to hold a part of the room as subtenant and to retain the key, the third person was not the tenant's agent, and the third person's possession of the key was not the tenant's possession of a key, essential to give him full possession of the premises.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 448, 449; Dec. Dig. § 128.*]

4. LANDLORD AND TENANT (§ 172*)—EVICTION—ACTS CONSTITUTING.

The arbitrary refusal of a landlord to furnish a tenant of rooms in an office building with a key, though the tenant offered to pay the cost thereof, is an eviction.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 695–703; Dec. Dig. § 172.*]

5. LANDLORD AND TENANT (§ 190*)—PARTIAL EVICTION—EFFECT.

Where there is a partial eviction by an arbitrary and willful interference with the tenant's right of ingress and egress, there is such evic-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tion as will suspend the rent of the premises during the period of partial eviction.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 765–769; Dec. Dig. § 190.*]

6. LANDLORD AND TENANT (§ 130*)—QUIET ENJOYMENT—IMPLIED COVENANT.

A covenant of quiet enjoyment by a lessee is implied, and the lease need not contain such a covenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 470–481; Dec. Dig. § 130.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the American Tract Society against Paul Jones. From a judgment for plaintiff, rendered in the Municipal Court of the City of New York, defendant appeals. Reversed, and new trial ordered.

Argued March term, 1912, before GUY, LEHMAN, and BIJUR, JJ.

Irving Goldberg, for appellant.
W. H. Van Steenbergh, for respondent.

GUY, J.   The plaintiff sues, as landlord, to recover rent for the months of July and August, 1911, for offices occupied by defendant as an attorney and counselor at law.   The defendant had, for several years prior to May, 1911, been a tenant in plaintiff's building, and at the time of the making of the lease in question was occupying room 504 in said building as a monthly tenant.   Some time prior to May 1, 1911, he leased from plaintiff, for the term of one year, beginning May 1, 1911, rooms 505 and 506, immediately adjoining room 504. There was no entrance from the hallway into room 505.   At the time the lease was made, room 506 was occupied by a tenant of plaintiff named Shapiro, an attorney at law.   On the beginning of the term of his lease, defendant arranged with Shapiro, with the knowledge and consent of the landlord, to continue, as a subtenant of defendant, to occupy room 506; and Shapiro continued on as a subtenant, retaining the key to room 506, which had previously been given him by the plaintiff.   Defendant testified on the trial that, at the time of the making of the new lease, plaintiff's representative, with whom he arranged for the making of the new lease, and who brought him the written lease to be executed, told him that, upon going into possession of rooms 505 and 506 on May 1st, he (the defendant) might continue to use room 504 as an entrance to rooms 505 and 506 until the plaintiff gave him a key to 506.   Defendant entered into possession of rooms 505 and 506 on May 1st, but did not receive at that time from the plaintiff a key to room 506, and thereafter, for a period of two months, with the permission of the plaintiff, continued to use room 504 as an entrance to the rooms leased by him.   In the latter part of June a new manager, appointed by the plaintiff to take charge of the building, notified defendant that he could not continue to use 504 as an entrance to the rooms leased by him, and, subsequent thereto, room 504 was closed, and the defendant prevented from using the same.

At the time of such notification, defendant demanded of plaintiff's

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

agent and manager a key to room 506, which plaintiff's manager refused to give him. Defendant testified that he then offered to pay the cost of such additional key, but this offer was rejected; that he then said he would bring a mechanic into the building and have him fit a key to room 506, and plaintiff's manager told him he would not allow him to bring a mechanic in for such purpose; that plaintiff's manager thereafter instructed the elevator starter not to permit any tenant to enter his office with the pass keys in the possession of the landlord. Defendant further testified that during the months of July and August, 1911, he was, by such refusal of the landlord to furnish him with a key, or to permit him to obtain one, after Shapiro's refusal to let him use the key previously given Shapiro by the plaintiff, deprived of the use of his offices for several hours each day by reason of the fact that Shapiro, the subtenant, as a rule, did not come to his office until 10:30 or 11:30 a. m., and sometimes not until the afternoon; that defendant called the attention of the landlord to this fact, and offered to pay the rent for the months of July and August, if the landlord would permit him to have an additional key, but that this offer was refused, and that defendant had no key to the offices leased by him until the month of October, 1911, at which time the landlord furnished him with an additional key; that defendant thereafter continued to pay the rent of his offices as it accrued, but refused to pay the rent for the months of July and August, on the ground that the refusal of the landlord to furnish him with an additional key, or to permit him to obtain a key during said months, constituted a partial eviction by the landlord, which suspended the payment of rent during that period; and defendant's sole defense in this action, and the sole question involved on this appeal, is whether such conduct on the part of the landlord did, in law, amount to a partial eviction, which would suspend the rent during said two months.

[1, 2] The learned trial justice properly held that the alleged oral agreement to permit him the use of room 504 as an entrance, made previous to the execution of the written lease, was merged in the written lease, and a breach of said agreement would not constitute an eviction; but the evidence as to the making of such an agreement is material on the point whether the landlord, prior to October, 1911, ever gave to the defendant, as tenant, such full possession of the premises as he would be entitled to under his lease.

"When a man grants a thing to be used for hire, he grants it with all such appurtenances and accompaniments as usually and properly belong to it, and are necessary to enable the hirer to have that use and enjoyment of the thing leased for which the hire is agreed to be paid." McAdam on Landlord & Tenant, vol. 1 (4th Ed.) § 83, p. 291.

A key is the symbol of possession. The furnishing a tenant with a key to leased premises is a customary incident to the giving of possession, just as the surrender of the key by the tenant is evidence of an intent on his part to surrender possession. Though the landlord was within his rights in subsequently depriving the defendant of the use of room 504 as an entrance, it became his duty, in so depriving the defendant of that means of access, to place the defendant in full pos-

session of the leased premises by furnishing him with a key thereto; the defendant's possession up to that time having been a limited possession, dependent upon his right of access through room 504.

[3] It is urged that in permitting Shapiro to continue as a subtenant, and to retain the key previously given him by the plaintiff, defendant made Shapiro his agent, and Shapiro's possession of the key was defendant's possession thereof. While this is true in a certain sense, the fact that the landlord had knowledge of the continued occupancy of part of room 506 by Shapiro, and his retention of the key previously given him by the landlord, and had acquiesced therein, charged him with notice that, in order to enjoy the beneficial use of the leased premises, it was necessary for the defendant to have an additional key to the only door furnishing a means of access thereto.

[4] The arbitrary refusal of the plaintiff to furnish the defendant with an additional key, even though he offered to pay the cost thereof, and, in particular, his refusal to permit him to bring a mechanic into the building for the purpose of supplying himself with such additional key, in connection with the instructions given to the elevator starter not to let tenants into their offices with the landlord's pass keys, shows such a hostile attitude on the part of the landlord toward the tenant, such willful disregard of the tenant's rights, and such willful and unreasonable interference with defendant's enjoyment of the leased premises as amounts in law to an eviction.

[5] It is well settled that, where there is a partial eviction by an arbitrary and willful interference with the tenant's right of ingress and egress, it is not essential, in order to set up the defense of partial eviction, that the tenant should have entirely vacated the premises. It is sufficient if the evidence shows an interference with, or disturbance of, the beneficial enjoyment of the demised premises, intentionally committed by the landlord and injurious in its character. Lawrence v. Edwin A. Denham Co., 58 Misc. Rep. 543, 109 N. Y. Supp. 752; Wells v. Caro, 74 Misc. Rep. 87, 131 N. Y. Supp. 573; Cohen v. Dupont, 1 Sandf. 260; Jackson v. Paterno, 58 Misc. Rep. 201, 108 N. Y. Supp. 1073.

[6] It is not necessary that the lease should contain a covenant of quiet enjoyment. This covenant is implied. Wells v. Caro, supra.

The evidence introduced by the defendant establishes fully the defense of partial eviction on the part of the landlord during the months of July and August, 1911. The legal effect of such partial eviction was to suspend the entire rent of the premises during said period. Lawrence v. Edwin A. Denham Co., 114 N. Y. Supp. 859, 860.

The direction of a verdict in favor of plaintiff was therefore error, and the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.