OCEAN FIFTH REALTY CORP., Landlord, *v.* JOSEPH STERN et al., Tenants.

Municipal Court of the City of New York, Borough of Brooklyn, December 27, 1951.

*Rubinton & Coleman* for tenants.

*Abraham Pruzan* for landlord.

FEIDEN, J.   This is a holdover proceeding brought by the landlord to recover possession of a repair shop and gas station. The case was tried by the court and a jury.   Prior to May, 1951, one Riccardi was in possession of the premises.   He had no lease. He spoke to one Taub, the authorized representative of the landlord, and informed him that he was giving up the station and desired to sell the personal property contained thereon. He wanted to know whether it was all right for him to do so. Taub said he would work something out with the new tenant, if there was a new tenant.   During the first week of May, 1951,

Joseph Stern, who is one of the tenants herein, having heard that Riccardi intended to give up the station, went to see him. Riccardi told him he would have to see Taub. Taub said he approved Stern's proposed occupancy but insisted upon a monthly rental of $85. Riccardi had been paying $75 per month for these premises as well as for four garages. Taub told Stern there had been no lease. Stern testified that he asked Taub whether he could get a lease but was told that the property belonged to an estate and he did not want to tie it up. According to Stern, Taub repeated this several times but added that he had nothing to worry about; that he would be there a long time. Stern paid $1,000 to Riccardi for the equipment, tools, gas, oil and other personal property on the station, all of which was readily removable. Nothing was paid for good will. Stern commenced doing business at the station on May 12th. On Monday, May 14, 1951, Taub appeared at the gas station and went through the ceremony of having Riccardi turn the keys over to him formally, whereupon he in turn handed them to Stern. Stern acquiesced in this procedure. Taub insisted that Riccardi pay him rent for the first half month and that Stern pay rent directly to him for the second half, which Stern did, paying his $42.50. Stern had previously given Riccardi $37.50 for the second half of the May rent which Riccardi returned to him. Stern on behalf of both tenants, signed the following receipt: '' We hereby acknowledge receipt of the keys to the service station at 2030 Ocean Parkway, between Ocean Parkway and E. 5th Street, Brooklyn, N. Y. It is understood that we are renting the premises as monthly tenants at a rental of $85.00 per month ''.

None of the parties was represented by an attorney.

This litigation involves a consideration of the decontrol provisions of the Business Rent Law contained in the last sentence of section 12 of the Business Space Rent Control Law (L. 1945, ch. 314, as amd. by L. 1950, ch. 326, eff. March 31, 1950) which declares: '' The provisions of this act also shall be inapplicable with respect to any business space now vacant or hereafter vacated by a tenant.'' The landlord contends that these premises constitute business space '' hereafter vacated by a tenant '', viz., space vacated by Riccardi after March 31, 1950. The tenants contend that since the premises were never physically unoccupied, the decontrol provisions do not apply.

The court cannot agree with the tenants' interpretation. As a simple matter of statutory construction, the facts herein present a situation where the premises have been '' vacated by

a tenant '' within the meaning of section 12 of the Business Rent Law, so as to render the provisions of the act inapplicable by its terms. Once there has been a cessation of occupancy or dominion by the original tenant, the premises must be deemed vacated. To vacate means '' to make vacant '' (Webster's New International Dictionary [2d ed.], p. 2810). It is erroneous to assume that the word denotes a condition of realty that is bare, empty or devoid of objects upon it. The distinction is well illustrated in the same work as follows (p. 840): '' That is EMPTY (opposed to *full*) which has nothing in it; that is VACANT (opposed to *occupied*) which has been, or is intended to be, occupied; as, an *empty* (never *vacant*) bucket, bottle, purse, stomach; *empty*-handed; a *vacant* (it may be, also *empty*) lot, house, office, seat ''. A consideration of this lexicographic exposition leads inevitably to the conclusion that premises are vacated when one ceases to occupy them and not when one physically denudes them of their contents. A point was reached in the dealings of the parties herein when the first tenant no longer used the premises and indicated by overt acts that his tenure was at an end. At that moment, so far as he was concerned, the premises were vacated and the protective force of the statute lapsed. (See *Polich* v. *Severson*, 68 Mont. 225.)

This view is supported by the Report of the New York Temporary Commission to Study Rents and Rental Conditions (Legislative Document No. 49, 1950). The report to the Legislature, in part, at pages 9–10, states: '' When a tenant voluntarily vacates his loft, his office or his store the Commission believes that the State's duty to that tenant has been discharged.''

The report at page 14 under the title '' Amendments to Commercial and Business Laws '' containing suggested amendments states: '' 2. Decontrol space now or which hereafter becomes vacant. It was the primary purpose of these laws to assure tenants occupying commercial and business space continuing occupancy during the period of the emergency. That purpose will not be weakened or disturbed by freeing from control space which a tenant vacates voluntarily.''

In *Matter of Fabio* (*Sleed*) (N. Y. L. J., Sept. 21, 1951, p. 584, col. 5 [Sup. Ct., Queens Co.]) a landlord formerly occupied a store for his own use. He sold his business and gave the purchaser a five-year lease commencing May 1, 1950, at a rental of $2,400 for each of the first three years and $2,750 for each of the last two years. In a proceeding brought by the purchaser to fix the emergency rent he argued that the space was

not decontrolled because it was never physically unoccupied, and asked the court to fix the emergency rent. The court held " The petitioner was in no danger of being evicted on the day he signed the lease; he was not then a tenant and it is a *tenant's possession* which the statute seeks to preserve. Upon the facts here, it is all the same as though the respondent had vacated the premises on May 1, 1950, the effective date of the lease."

The tenants cite the cases of *Rothbard* v. *Rothman* (143 App. Div. 156) and *Bedell* v. *Edgett* (120 App. Div. 451). A careful consideration of these cases demonstrates that the definition of the word " vacant " as used in those cases is in conformity with this determination and does not support the position urged by the tenants. In the case of *Bedell* v. *Edgett* (*supra*), the premises were held not vacant where the tenant remained " after the end of the term named in the lease under which he entered into possession ". In the case of *Rothbard* v. *Rothman* (*supra*), plaintiff was a tenant of a store. The landlord had agreed to pay plaintiff $200 if he would vacate and surrender the premises and relinquish all right or claim to continue in possession. Instead, he executed a bill of sale of the store to his wife and also executed an agreement by which he bound himself to deliver possession of the premises to a corporation. He nevertheless sued for the $200. The court affirmed the holding of the Municipal Court that " the property had not been vacated and surrendered " so as to entitle the plaintiff to the $200. Both authorities consistently indicate that vacancy so far as tenancy is concerned arises when that tenant ceases to exercise dominion and that at such a point he must be deemed to have vacated.

The tenants further contend that they are assignees of the former tenant and as such are entitled to the same protection under the Business Rent Law. The sole question of fact as to whether the tenants were assignees or tenants under a new leasing was submitted to the jury which returned a verdict in favor of the tenants. The finding of the jury that there was an assignment is not supported by any evidence. The facts and reasonable inferences from the facts have the legal effect of creating a new landlord and tenant relationship. So far as the key ceremony is concerned it simply and emphatically reinforces the conclusion that the first tenant was surrendering all rights and the new tenant being invested with independent rights by the landlord and not by the preceding tenant. A key has long been recognized as being a symbol of possession. (1 Rasch on Landlord and Tenant and Summary Proceedings,

§ 9, p. 7; *American Tract Soc.* v. *Jones,* 76 Misc. 236; *Davies, Turner & Co.* v. *Schatzen,* 124 Misc. 170.) Any possible doubt on the subject of the change in the relationship is dispelled by the circumstance that the new tenure related to different premises, viz., less space and also by the fact that the rental was increased. One tenant's very participation without objection *ante litem motem* in the key ceremony as well as his taking back the half month's rent which he had given the first tenant and giving a check for the last half of May directly to the landlord was a clear recognition that his rights were derived from original grant and not by assignment.

The alleged oral statement which Taub is asserted to have made to Stern that he would be there a " long time " (which is contradicted by the receipt signed by Joseph Stern) is of no help to the tenants. Such oral statement, aside from other legal informities, is too indefinite to have any binding effect. (See *Bamman* v. *Binzen,* 16 N. Y. S. 342, affd. 65 Hun 39, affd. 142 N. Y. 636; Richardson on Contracts, § 35; *Norman* v. *Morehouse,* 243 S. W. 1104 [Tex. Civ. App.]; *Hill* v. *Hunter,* 157 S. W. 247 [Tex. Civ. App.], and *Howard* v. *Tomicich,* 81 Miss. 703.)

All motions made by the tenants at the end of the landlord's case and at the end of the entire case are denied. The verdict of the jury is set aside. Final order is directed for the landlord. Thirty days' stay with leave however to the tenant, on a proper showing, to make application for a further stay.