Henry Epstein, J.
This action is brought to restrain interference with plaintiff’s quiet use and enjoyment of premises and for damages for such unwarranted interference prior to this action. Plaintiff corporation is lessee of the street level floor and that immediately above it under a 21-year lease from 1949 to October 31, 1970. The. premises are 208 Central Park South. Defendant 210 Central Park South Corp. is the owner and Carol Management Corp. is managing agent. Defendant Alfred Kaskel owns and controls both corporate defendants. Plaintiff had for some years operated a restaurant in the leased premises under the name of “ Henry Stampler’s Filet Mignon ”. The stock of plaintiff corporation was all owned by Henry Stampler, who allowed the use of his name by the corporation. Part of the restaurant operations were conducted in the adjoining property at 210 Central Park South, but without the protection of the lease here in question. Stampler then decided to establish his personal name restaurant at 15 Central Park West and organized the corporation Henry Stampler’s Filet Mignon, Inc., for that purpose. The reduced facilities at 208 Central Park South were to be utilized for restaurant purposes of a different and noncompeting character. The name and decor were to be changed for a Polynesian type restaurant at the old premises. On May 20, 1960 plaintiff’s attorneys wrote Carol Management to this effect and emphasized that there was no intention of surrendering either lease or liquor license.
Rent at the lease rates was paid promptly on June 1, July 1, August 1, September 1 and October 1. Such rents were accepted, deposited and retained. Interior changes were being made, decorations altered, arrangements made for sale of the stock and formal agreements for Alcoholic Beverage Control Board approval were entered into. All equipment, furniture and furishings remained at the 208 Central Park South premises as *966 part of the transaction, fully equipped for a restaurant operation. Two individuals, Charles Bates Diorio and Ralph Johann Nathan, were to purchase the stock and run the new Polynesian restaurant. The premises were never vacant or deserted. The interim period of the Summer months needed for the turnover to a new type restaurant, in which period extensive changes were being made-—• cannot on the evidence presented be considered in any sense a vacatur or desertion of the premises. They were kept under lock and key; rent was regularly paid; occupants were at work daily, even on weekends and in evenings. Such facts operate most strongly against the landlord (Bedell v. Edgett, 120 App. Div. 451, 452; Adams-Flanigan Co. v. Kling, 198 App. Div. 717, affd. 234 N. Y. 497; Woollard v. Schaffer Stores Co., 272 N. Y. 304, 312).
On October 18, 1960, some five months after the notice of change of character of operations from plaintiff’s counsel, defendant 210 Central Park South Corp. sent plaintiff by registered mail a notice of its election to terminate the lease after three days and calling for plaintiff to quit and surrender the premises. This notice was rejected and defendants warned they would be held to account for interference. What followed is an example of conduct hardly consonant with a lawful society. Defendant landlord literally took the law into its own hands and in definance of all pretense of lawful procedure, acted as if this City of New York were in a state of anarchy. On October 21, 1960, between midnight and 10:00 a.m. the following morning, landlord broke through a strong herculite door, entered the premises, removed all electric fuses, nailed and boarded up all windows, rear exits and entrances. Plaintiff on arrival the morning of October 22 removed the boards, re-entered the premises, installed new fuses, rearranged the disordered furnishings and continued with the preparations for reopening as a Polynesian restaurant.
On October 25, 1960, after plaintiff’s representatives had locked up for the night, and between 9:00 p.m. and 8:00 a.m. the next morning, defendant landlord exacerbated the tense situation by a second highhanded invasion of the premises. This time the landlord not only repeated his earlier forcible entry of October 22, but this time had a hired ironworker bar the windows and entrance with welded metal bars and plates. Acetylene torches and professional ironworkers had to be utilized to re-enter the premises by the plaintiff tenant. Armed guards were then employed and posted to prevent further intrusions. This action followed and a temporary injunction procured. Mr. Justice Markowitz on November 15, 1960 con- *967 tinned the injunction and the status quo, ordering an early trial which has now been had. Defendants have failed utterly to establish their separate defenses of surrender, evasion or vacatur of the premises in question. There has been no “ default in fulfilling any of the covenants of this lease ’ ’; nor had the 11 demised premises become vacant or deserted ’ ’. Thus landlord had no right whatever under the lease to re-enter i£ by force or otherwise ”, nor any right to dispossess plaintiff “ by summary proceedings or otherwise”. Landlord’s highhanded actions are not excused because its sole stockowner and boss felt he was being “ held up ” for a substantial sum as the price of plaintiff’s surrender of the remaining 9 or 10 years of the lease. On December 5,1960, despite the stipulation on the basis of which Justice Markowitz stayed further action by all parties pending prompt trial, defendant wrote to the Alcoholic Beverage Control Board a letter which under the circumstances can only be regarded as a malicious effort to further embarrass plaintiff.
At the close of plaintiff’s case the court allowed an amendment to conform the pleadings to proof (a) that defendants’ acts were wanton and willful; (b) that the prayer include exemplary damages as well as actual damages. The pleadings, read liberally and applied intelligently to the proof, would not require the amendments so granted since, on the proof, such damages could be granted and the basis therefor established in the record. Defendants called but one witness, one Sol Katz, assistant secretary of the 210 Central Park South Corporation and Carol Management Corp. He also has acted as house counsel and personal counsel for the Kaskel owned corporations since 1923. He sent the notice of October 18,1960; he instructed maintenance men to close and bar the doors, but denied knowledge of the methods used to achieve this aim. He also ordered the resealing the second time but denied knowledge that the rent had been paid, received and deposited. Although he knew plaintiff’s counsel well, he “ never gave it any thought ” when it was suggested he might have contacted counsel for plaintiff. He was acting under orders from defendant Kaskel all the time and admitted thus acting. His denial of knowledge of the facts revealed — even of his own affidavit, represents fairly why little if any credibility can be accorded him. His function was undoubtedly to “ take the rap ” for Kaskel. He has done so. Motion to dismiss as to “ John Doe ” is granted, but denied as to Alfred Kaskel and other defendants. The sole question remaining is how damages may be calculated. The rent paid and called for by the lease is $815 a month. Plaintiff may reasonably calculate the rent paid from October through January *968 as lost time, equalling $3,260. The repairs to the bronze doors, removal of barricades, Pinkerton guards, total $2,108.50. Exemplary damages of three times these sums (total $5,268.50) are awarded, totaling $15,805.50. Plaintiff is also entitled to injunctive relief barring defendants from further trespass, invasion of privacy or interference with peaceable enjoyment of the leased premises during the remainder of the lease term. Findings and conclusions having been waived, the foregoing constitutes the decision of this court. Settle judgment.