Salvatore T. De Matteo, J.
In this nonpayment proceeding, the crucial question to be resolved is whether or not this apartment is decontrolled. The landlord claims such status by virtue of section 2 (subd. f, par. [17]) of the New York City Rent, Eviction and Rehabilitation Regulations.
The undisputed facts are as follows and their relation will clarify the legal issues to be determined.
The petitioner is the owner of a 16-family apartment building, located at 221 Elmwood Avenue, Brooklyn, New York, the respondent being a tenant in one of the dwelling units contained therein. The respondents moved into the apartment in controversy in 1967 in the capacity of building superintendents and remained in such situation until October 1971, when he voluntarily left the employ of the landlord. He, however, remained in said apartment as a regular tenant pursuant to a lease executed on November 2, 1971, to run for a period of two years, which established the monthly rental thereof at the sum of $125. The last rental set by the rent commission for this apartment prior to the respondent’s occupation thereof was $72.88 per month.
It is the position of the respondent that this section is not applicable to the instant case since he has been in continuous physical possession of the premises from 1967 to the present and hence no vacancy. The petitioner, on the other hand, contends that the resignation of the respondent as superintendent has created a vacancy freeing said apartment from regulation and giving her the right to charge any rental the market will bear except as regulated by the Federal Government’s stabilization regulations.
Hence, although there has been no hiatus in the physical possession of the apartment by the former superintendent, does his new role as tenant alter his legal personality and the rights that flow therefrom?
An exhaustive review of the authorities reveals no case dealing with the issue at bar and we must regard this matter as one of novel impression.
The function of the respondent while in the employ of the petitioner was to maintain and render repairs to the building in which he was given shelter as part of his compensation. His resignation from such employment vitiated the original reason for his occupation of the apartment in the controversy at bar and necessitated the employment of another as building custodian. The respondent himself acknowledged such change by *794 the volitional execution of the lease which created him a tenant of the landlord. He was no longer a servant of the petitioner.
If the landlord had rented this apartment to another after the superintendent’s departure therefrom, it would certainly he decontrolled. We see no reason to hold otherwise in this case. The respondent has lived in this apartment in two distinct legal roles — employee and tenant. Hence, when the parties executed the lease of November 2,1971, embodying the terms which regulated this apartment, a new relationship was then commenced between them — -that of landlord and tenant. Therefore, a vacancy existed within the meaning of section 2 (subd. f, par. [17]), so as to free said apartment from provisions of rent conrol. It is to be noted that if the lease antedated June 30, 1971, the apartment would have remained subject to governmental regulation. Another issue would be presented if the landlord had unilaterally terminated the employment of the respondent. However, this need not concern us since the respondent voluntarily tendered his resignation from the landlord’s service.
We must now determine whether the apartment rental established by the lease as in accord with the Federal stabilization guidelines. The appropriate method at arriving at the proper rent for this apartment was by surveying “ Current average monthly rent of comparable residences in the same marketing area,” at the time the lease was executed. See regulations 301.203 rule 39.82.15 of the stabilization guidelines.
At the trial of this issue, we received uncontradicted evidence offered by the landlord that the survey revealed that the comparable dwellings -in the general area of this apartment rented for approximately $125 per month in October-November, 1971. Furthermore, the landlord testified that the survey was performed in full compliance of the requirements set down by the Internal Revenue Service guidelines. This court, therefore, has no recourse but to accept such study as valid because we, ourselves, haven’t the facilities to -critically evaluate it. However, if the tenant feels this study is unrepresentative or inaccurate, he may ask the Internal Revenue Service to conduct an independent investigation in order to verify the conclusions reached therein. If that agency establishes that the tenant is being overcharged, it is not too late under the existing Federal stabilization guidelines to take appropriate legal measures to rectify any impropriety.
Let judgment in the -sum of $462 be entered to cover the rent due to and including July 31, 1972. Issuance of warrant stayed for five days.