■ In the Matter of EQUITY PROPERTIES CORPORATION, Appellant, v DANIEL W. JOY, as Commissioner of the Department of Rent and Housing Maintenance, Office of Rent Control, Respondent, and DEBORAH MAYER, Intervenor-Respondent.—Judgment, Supreme Court, New York County, entered on May 14, 1974, confirming the determination of the respondent Commissioner and dismissing the petition, affirmed. Respondent-respondent and tenant-intervenor-respondent shall recover of petitioner-appellant one bill of $60 costs and disbursements of this appeal. Equity Properties Corporation (EPC) is the owner of a building located on West 4th Street in Manhattan. One apartment in the building was rented to James Quiney (Quiney), who occupied the premises as a statutory tenant subject to the protection of the rent control laws. In September, 1971, Quiney decided to visit Ireland for an extended period of time and entered into an agreement with the intervenor-respondent Deborah Mayer (Mayer) for her to occupy the apartment, pay the rent in Quiney's name, and use the furnishings in the apartment. As part of the agreement, Mayer paid Quiney an additional lump sum of $250. When EPC learned of the arrangement, the only step taken was to extract an additional 10% in rental payments on the basis of "increased occupancy" (Rent, Eviction and Rehabilitation Regulations of City of N. Y. § 33.3) and also by demanding the additional 7½% increase due beginning January 1, 1972 under the maximum base rent program (Administrative Code of City of New York, § Y51-5.0). EPC even instituted summary proceedings in August, 1972 based on failure to pay the increased rental. In October, 1972, EPC furnished paint and paid Mayer $50 in discharge of the landlord's obligation to paint the apartment. In approximately April, 1972, EPC became aware of the fact that Quiney had no intention of returning to New York City. Mayer was nonetheless accorded the privileges of a rent-controlled tenancy even after the landlord knew of Quiney's intent permanently to vacate the apartment. All of the above actions on the part of EPC constituted a ratification by the landlord of the rent-controlled status of the apartment. Despite these factors, EPC filed a report of statutory decontrol on this apartment in February, 1973. The District Rent Director upheld this determination; however, upon the tenant's protest, the Commissioner found in favor of the tenant. Under the statute popularly known as the vacancy decontrol law (L. 1962, ch. 21, § 1 *et seq.*), upon occurrence of a vacancy, the apartment so vacated shall be "exempt from regulation and control" (L 1962, ch 21, § 1, subd 5, as amd.). The determination, regulation, and controls of rentals of apartments, however, were left in the hands of municipal governments of cities with populations of one million or more (L 1962, ch 21, § 1, subd 5, as amd.). A vacancy is defined in the Rent, Eviction and Rehabilitation Regulations, in pertinent part, as occurring by "voluntary surrender of possession" (Rent, Eviction and Rehabilitation Regulations, § 2, subd f, par [17]). In the case at bar, EPC by its acts as aforedescribed accepted Mayer as a statutory tenant, even after knowledge of Quiney's intent not to return. EPC did not treat the apartment as surrendered to it. It ill-behooves EPC now to claim that the premises were vacant within the meaning of the statute when at all times, until February, 1973, it acted under and took full advantage of increases allowable regarding statutorily controlled tenancies. Landlord's petition was therefore properly dismissed. Concur—Lupiano and Lane, JJ.; Capozzoli, J., concurs in a memorandum, and Murphy, J. P., and Nunez, J., dissent in a memorandum by Nunez, J., as follows: Capozzoli, J. (concurring). It is clear

that the single tenancy of the original tenant, Quiney, was acknowledged by the landlord to have become a double tenancy when he wrote to Deborah Mayer, the tenant-intervenor-respondent, that, because of her additional occupancy, a 10% increase in the rent would have to be paid. At the same time, and in the same note, he also stated that there would be an additional 7½% increase under the emergency rent laws. After Deborah Mayer, the tenant, got into the apartment the tenancy continued, except that, instead of there being a single tenant in occupancy, there were two. In April, 1972, when it was finally determined that Quiney, the original tenant, was not returning to the apartment, the tenant, Mayer, continued her possession. There was no break in the tenancy. It changed once again from double occupancy to single occupancy. The conclusion is inescapable that there was never a break in the tenancy. Hence no vacancy. Nunez, J., dissenting (Murphy, J. P., concurs). In my view the apartment in question became decontrolled when Mr. James Quiney, the tenant in possession prior to June 30, 1971, voluntarily surrendered possession and control thereof on a date subsequent. In October, 1971 Mr. Quiney left for Ireland with the stated intent to return and the present tenant-intervenor, Ms. Deborah Mayer, moved into the apartment. She paid Mr. Quiney $250 for the use of his furniture. Ms. Mayer advised the rent commission in writing that she had moved into the subject apartment as Quiney's subtenant for the duration of his sojourn in Ireland. The sojourn apparently became permanent and it is now conceded that Quiney has no intention to return. Ms. Mayer desires to retain possession with all the benefits of rent control. The purpose of the rent control laws is to protect the tenants in possession and to return apartments becoming vacant after June 30, 1971 to the free market. (L 1962, ch 21, § 1, subd 5, as amd.) When the landlord ascertained that Mr. Quiney had removed permanently, he filed a report of statutory decontrol with the appropriate district rent office. The application was opposed by Ms. Mayer but the District Director approved the landlord's report of statutory decontrol pursuant to section 2 (subd f, par [17]) of the Rent, Eviction and Rehabilitation Regulations "based on evidence in file which indicates that tenant [Ms. Mayer] took occupancy after June 30, 1971." On appeal to the Commissioner the tenant prevailed. Special Term upheld the Commissioner's ruling in favor of the tenant-intervenor. The apartment was deemed vacated within the meaning and intent of the rent control laws when the original tenant ceased to occupy and exercise dominion over it. *(Ocean Fifth Realty Corp. v Stern,* 202 Misc 336; *Church v Doe,* 234 NYS2d 522; see, also *Obstfeld v Sims,* 71 Misc 2d 792.) That the landlord treated Ms. Mayer as the tenant is of no moment. The fact remains that she became a tenant under the subterfuge that she was temporarily there as the original tenant's friend. Had she applied to become the tenant in her own right, there would have been no question of the landlord's right to treat the apartment as decontrolled and to demand a higher rent from her. The control laws protected Mr. Quiney but not Ms. Mayer who became a tenant subsequent to June 30, 1971. The order appealed from should be reversed and the petition to annual respondent's determination of December 13, 1973 granted. The apartment in question should be declared to be decontrolled as found by the District Director in his order of July 24, 1973.